**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| ROSETTA WILLIAMS, | ) | |
| and D.W., a minor, | ) | |
| BY AND THROUGH NEXT FRIEND | ) | Case No.:  1:24-cv-73 |
| ANDREA COVINGTON, | ) | |
| NEXT OF KIN OF DEMARCUS | ) | JURY TRIAL DEMANDED |
| WILLIAMS, DECEASED. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CORPORAL DYLAN STEVENS, | ) | |
| Individually and In His Official Capacity; | ) | |
| OFFICER TERRY ELMORE, Individually | ) | |
| and In His Official Capacity; | ) | |
| And the CITY OF HAYTI, | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

COME NOW Plaintiffs, by and through their undersigned counsel, and hereby state the following in support of their Complaint for Damages and Jury Demand: This is a complaint for damages based upon violations of federal and state civil rights, and state law, committed by the City of Hayti, Missouri, and its respective officials, police officers, employees, and/or agents in their individual and official capacities. Their wrongful acts and/or omissions caused the painful and unnecessary death of Damarcus Williams ("Mr. Williams"), a 35-year-old father, son, and sibling.

This cause of action arises out of the death of Damarcus Williams on September 25, 2021, which occurred at approximately 4:30 p.m., due to the objectively unreasonable

use of force utilized by, at the behest of, and/or with the approval of all named Defendants against Demarcus Williams at 1009 North Oates Street, Hayti, Missouri.

## JURISDICTION

1.      This case is brought pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343 (1-4). Pursuant to 28 U.S.C. § 1367, this court also has supplemental jurisdiction over the state law claims of Plaintiffs for wrongful death, survival, other state law claims, and over the defendants.

## VENUE

2.      The claims alleged herein arose from events or omissions occurring in the Eastern District of Missouri. Therefore, venue lies in the Eastern District of Missouri. 28 U.S.C. 1391(b)(2).

## PARTIES

### PLAINTIFFS

3.      At all times material to this Complaint, Plaintiff Rosetta Williams, an adult person and natural mother of Demarcus Williams, is and was a resident and private citizen of the State of Missouri, as well as a real party in interest as to the Estate of Demarcus Williams.

4.      At all times material to this Complaint, Plaintiff D.W. a minor, by and through her mother and Next Friend, Andrea Covington, was the minor child daughter of Demarcus Williams, is and was a resident and private citizen of the State of Arkansas, as well as being an heir and real party in interest as to the Estate of Demarcus Williams.

### DEFENDANTS

5.      Plaintiffs are informed, believe, and thereupon allege that Defendant CITY OF HAYTI ("CITY") is a duly constituted governmental entity in the State of Missouri, and is, or was, the employer of all individually named Defendants including, but not limited to, those who are sued in their individual and official capacities. Defendant CITY is substantially and properly insured against liability for its own acts and omissions, as well as those acts and omissions of its officers, employees, servants, and agents.

6.      Plaintiffs are informed, believe, and thereupon allege that Defendant CORPORAL DYLAN STEVENS ("STEVENS"), at all times material hereto, is and was a citizen of the United States of America and of the State of Missouri; was a duly appointed and sworn police officer; and was acting in his individual capacity and/or under the color of state law, and within the scope of his employment with CITY.

7.      Plaintiffs are informed, believe, and thereupon allege, upon their information and belief, that Defendant OFFICER TERRY ELMORE ("ELMORE"), at all times material hereto, is and was a citizen of the United States of America and the State of Missouri; was a duly appointed and sworn police officer; and was acting in his individual capacity and/or under the color of state law, and within the scope of his employment with CITY.

8.      Plaintiffs are informed, believe, and thereupon allege that each of the individual Defendants' acts were known to, discovered by, approved and/or ratified by Defendant CITY, by and through CITY's policy makers, decision makers, officials, officers, and/or supervisors.

9.      Plaintiffs are informed, believe, and thereupon allege that all times mentioned herein, each of the Defendants, whether individually named or through their agents, employees, and/or officers, were the co-conspirators of the other and did so engage in a common plan to wrongfully deprive decedent Demarcus Williams of his rights to the due process of law, life and the enjoyment of life, free speech, and freedom from cruel and unusual punishment.

10.     In doing each and all of the things herein mentioned, or neglecting or intentionally failing to rectify said misconduct, all of which showed deliberate indifference on the part of each of the Defendants, each of the Defendants was acting pursuant to a *de facto* policy and within the scope of such agency, employment, and conspiracy and with full permission, knowledge, approval, ratification, and support of each other.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

### THE DEATH OF DEMARCUS WILLIAMS

11.     On September 25, 2021, after having recently been released from the hospital for COVID-19 treatment, Mr. Williams was at his home on 1009 North Oates Street, in Hayti, Missouri, when a 911 call was placed to the Pemiscot County Sheriff's office for medical assistance to address a change in Mr. Williams' mental status, wherein dispatch was also advised that Mr. Williams was just released from the hospital due to Covid.

12.     Defendant STEVENS and Defendant ELMORE were the first Hayti officials to respond to the call for medical services and, upon arrival, the officers were

4

invited into the home where they observed Mr. Williams sitting in a chair near the doorway.

13.    Body camera footage shows that Defendant STEVENS observed the strained mental state of Mr. Williams and began to search the home after obtaining Mr. Williams' consent to do so.

14.    During Defendant STEVENS' search, Defendant ELMORE and Mr. Williams relocated to the front doorway where they began discussing the 911 call for medical services.

15.    Mr. Williams was unarmed and did not at any point physically or verbally threaten the officers, nor did he attempt to leave the scene.

16.    Throughout the initial communications with Defendant STEVENS and Defendant ELMORE, Mr. Williams remained calm and was within his rights to refuse medical care.

17.    Video surveillance shows communications between Defendant STEVENS, Defendant ELMORE, and Mr. Williams escalated quickly as the Defendants attempted to convince Mr. Williams to seek medical care.

18.     During the communications in the front doorway, Mr. Williams is seen holding a glass of water and a framed mirror.

19.    Defendant STEPHENS attempted to physically remove the framed mirror from Mr. Williams when Mr. Williams advised that he wanted to carry it.

20.     Defendant STEPHENS advised Mr. Williams' mother, Plaintiff Rosetta Williams, that if Mr. Williams refused to go in the ambulance, then she would have to contact a judge for a commitment order.

21.     As evidenced in the body camera footage, Defendant STEVENS further explained to Rosetta Williams that he was unable to call "MOCARS" (Missouri Crisis Access Response System, an intervention line for mental health crises) at that time, and further explained that MOCARS normally does the police department's commitments but that he didn't believe MOCARS would take Mr. Williams and that MOCARS "have not been helpful whatsoever."

22.     Defendant STEVENS' statements and acknowledgement of Mr. Williams' mental health issues and limitations on available treatment indicated his clear knowledge of the mental status of Mr. Williams, which, while of concern to those around him, was insufficient to warrant emergency commitment and would require judicial intervention.

23.     After making multiple statements that Mr. Williams was "wasting his time", Defendant STEVENS again attempted to physically remove the mirror from Mr. Williams' hands.

24.     Without provocation or justification, Defendant STEVENS then activated his employer-issued electronic control weapon (also commonly known as, and referred to herein as, a "Taser") in the "Stun Drive" mode and applied it to Mr. Williams' hand in an unsuccessful attempt to take possession of the mirror.

25.     Mr. Williams continued to advise the officers that he was "okay" and was "figuring it out".  Mr. Williams specifically and calmly asked the officers to "please stand down…this ain't right."

26.     Thereafter, Defendant ELMORE, without warning, deployed his Taser towards Mr. Williams, causing the Taser's barbs to strike Mr. Williams in his chest and stomach.

27.     A Taser is an electronic control weapon, characterized as a "less-lethal" firearm, which delivers debilitating electric shocks in order to cause neuromuscular incapacitation and force compliance with police orders through such incapacitation and/or through pain[1]. Typical deployment of the Taser involves firing two barbs containing electrodes at the victim. The barbs are designed to penetrate clothing and pierce the body of a target.

28.     Mr. Williams, in reaction to the extensive pain and electric shock applied to his body from the Taser, removed the Taser's barbs from his stomach and chest.

29.     Defendants STEVENS and ELMORE then used their physical force to bring Mr. Williams to the ground and placed him face-down in the yard with the right side of his face pressed against the ground.

30.     While Mr. Williams was face down on the ground, Defendant ELMORE repeatedly used the Taser in Drive Stun mode to Mr. Williams' stomach, back, left hamstring, left calf, and right calf.

---

[1] Geoffrey P. Alpert et al., *Police Use of Force, Tasers and Other Less-Lethal Weapons*, Research in Brief, Washington, DC: U.S. Department of Justice, National Institute of Justice, grant number 2005–IJ–CX–0056, May 2011, 1, NCJ 232215.

31. Defendant STEVENS kneeled on Mr. Williams' back and neck, putting his body weight onto Mr. Williams and pinning him to the ground.

32. Upon information and belief, Defendant ELMORE twisted Mr. Williams' arms to the side of his body and held his right arm in this position by kneeling on his arm.

33. Defendant STEVENS drove his right knee into the back of Mr. Williams' neck, supporting his body weight using Mr. Williams' neck, as Mr. Williams' face remained pressed into the ground.

34. Defendants kept Mr. Williams in a prone position with their collective bodyweight on top of him for several minutes.

35. Defendants ELMORE and STEVENS both advised Missouri State Highway Patrol that once Mr. Williams was secured and handcuffed, they noticed Williams had "shallowed/labored" breathing.

36. Immediately upon being rolled onto his right-side EMS personnel discovered Mr. Williams unconscious with shallow, slow respirations at approximately eight (8) respirations per minute.

37. Mr. Williams was placed in the ambulance where he was immobile, his body was limp, and he was in respiratory arrest at 4:23 p.m.

38. Mr. Williams was pronounced deceased at approximately 4:30 p.m.

39. Mr. Williams suffered and endured substantial, prolonged, and excruciating pain and suffering due to the acts and omissions of all defendants, and each of them.

8

40.     The Fourth Amendment prohibits the use of deadly force in non-deadly circumstances which do not pose an immediate threat of serious bodily injury and/or death.

41.     It has long been known by the law enforcement community that the use of neck restraints on subjects can lead to death.

42.     It has long been known by the law enforcement community that the use of a Taser on subjects can lead to death.

43.     It is well known throughout the law enforcement and medical communities that holding a subject in a position of prone restraint for prolonged periods of time can cause death to the subject.

44.     A Taser causes a victim to feel extreme pain, immobility, and helplessness upon deployment of the Taser's electric shock.

45.     Tasers can be, and are known by law enforcement to be, potentially lethal.

## NATURE OF HARM

46.     Each of the aforementioned acts and omissions by each Defendant directly, legally, and proximately caused the following: violation of due process (all plaintiffs and Mr. Williams); loss of enjoyment of due process (all plaintiffs and Mr. Williams); extreme mental and emotional pain, suffering and anguish (all plaintiffs and Mr. Williams); extreme physical pain, suffering and anguish (Mr. Williams); deprivation of familial association (all plaintiffs); loss of enjoyment of familial association (all plaintiffs); loss of life (Mr. Williams), loss of enjoyment of life (Mr. Williams); loss of freedom of expression (Mr. Williams), loss of enjoyment of freedom of expression (Mr.

Williams), detriment to lifestyle and quality of life (all plaintiffs); loss of love, services, companionship, comfort, instruction, guidance, counsel, training, and support (all plaintiffs); humiliation (all plaintiffs and Mr. Williams); expenses associated with medical, funeral, and burial costs (all plaintiffs as heirs to **Mr. Williams' estate**).

## CLAIMS FOR RELIEF

### Count I - 42 U.S.C. § 1983 – 4th Amendment

47.     Plaintiff incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

48.     The conduct by the officers identified in this count and described herein constituted excessive and deadly force in violation of the Fourth Amendment of the United States Constitution, and clearly established law.

49.     At all material times, Defendants ELMORE and STEVENS were each acting under the color of state law, as agents of the State of Missouri, and within the scope of their employment and authority as duly certified law enforcement officers of the CITY.

50.     At all material times, Defendants ELMORE and STEVENS had no reason to believe that Mr. Williams was armed or dangerous.

51.     Taser logs indicate that Defendants ELMORE and STEVENS excessively utilized the Taser, consisting of 28 total trigger pulls lasting approximately 95 seconds, in addition to the use of deadly force in applying direct pressure to and kneeling on Mr. Williams' neck and back.

52.     Defendants ELMORE and STEVENS' excessive Taser usage and prone

restraint was objectively unreasonable and violated clearly established law.

53.    As a result of Defendants ELMORE and STEVENS' unjustified, excessive, illegal, and deadly use of force, Mr. Williams experienced excited delirium and conscious pain and suffering.

54.    As a result of Defendants ELMORE and STEVENS' unjustified, excessive, illegal, and deadly use of force, Mr. Williams died.

### Count II – 42 U.S.C. §1983 – *Monell Liability*

55.    Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

56.    This cause of action arises under United States Code, Title 42, Section 1983, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege, or immunity secured to themselves and Mr. Williams by the First, Eighth, and Fourteenth Amendments to the United States Constitution.

57.    The Mayor, the City Council, and the Police Chief had final policymaking authority with regard to establishing written policies and training programs governing the conduct of the CITY officers performing policing functions on behalf of the CITY.

58.    The Mayor, the City Council, and the Police Chief established and/or approved of the CITY's written policies and training governing the conduct of CITY officers performing policing functions.

59.    The written policies and training established and/or approved by The Mayor, the City Council, and the Police Chief constitute the official policy of the CITY and were the moving force behind and cause of Mr. Williams' death and harm to

Plaintiffs.

60.     The CITY failed to properly train or modify its training to Defendant Officers and its other officers, including but not limited to, matters related to the reasonable and appropriate use of force during such medical calls, arrests, and intervention in the excessive use of force by fellow officers.

61.      Effectuating an arrest or detainment, using force to effectuate an arrest or detainment, and intervening in the use of excessive force are usual and recurring situations that Missouri law enforcement officers and other agents encounter on a regular basis.

62.     The CITY specifically knew that its officers needed training regarding the use of prone restraint and was required to provide its officers with such training.

63.     The CITY specifically knew that its officers needed training regarding the use of Tasers and was required to provide its officers with such training.

64.     With deliberate indifference to the rights of citizens, the CITY failed to provide adequate training to its officers on the use of prone and neck restraint.

65.     With deliberate indifference to the rights of citizens, the CITY failed to provide adequate training to its officers on Taser use.

66.     With deliberate indifference to the rights of citizens, the CITY allowed its officers, including Defendants ELMORE and STEVENS, to utilize CITY-issued Tasers to force non-detained citizens into compliance with officer requests, whether or not such citizens were bound to honor such requests under Missouri law.

67.     With deliberate indifference to the rights of citizens, the CITY allowed its officers, including Defendants ELMORE and STEVENS, to utilize physical force to

force non-detained citizens into compliance with officer requests, whether or not such citizens were bound to honor such requests under Missouri law.

68.     As such, the CITY was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

69.     The failure to train and/or to appropriately modify training constituted official CITY policies, practices, or customs.

70.     As a direct and proximate result of the CITY's acts and omissions, Mr. Williams suffered injuries, experienced pain and suffering, and ultimately died.

71.     The CITY, acting by and through its Mayor and/or other policymakers, had knowledge of its unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

72.     Plaintiffs are informed, believe, and thereupon allege that these policies, practices, customs, and procedures are intentional or the result of deliberate indifference on the part of Defendants, by and through their decision makers.

73.     The foregoing unconstitutional customs and practices were a direct and proximate cause of harm to Plaintiffs and Mr. Williams.

### Count III – 42 U.S.C. §1983 – *Canton Liability*

74.     Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

75.     The CITY failed to properly train or modify its training to Defendant Officers and its other officers, including but not limited to, matters related to the reasonable

13

and appropriate use of force during such arrests and/or detainment, and intervention in the excessive use of force by fellow officers.

76.    Effectuating an arrest or detainment, using force to effectuate an arrest or detainment, and intervening in the use of excessive force are usual and recurring situations that Missouri law enforcement officers and other agents encounter on a regular basis.

77.    The CITY specifically knew that its officers needed training regarding the use of prone restraint and was required to provide its officers with such training.

78.    The CITY specifically knew that its officers needed training regarding the use of Tasers and was required to provide its officers with such training.

79.    With deliberate indifference to the rights of citizens, the CITY failed to provide adequate training to its officers on the use of prone and neck restraint.

80.    With deliberate indifference to the rights of citizens, the CITY failed to provide adequate training to its officers on Taser use.

81.    With deliberate indifference to the rights of citizens, the CITY allowed its officers, including Defendants ELMORE and STEVENS, to utilize CITY-issued Tasers to force non-detained citizens into compliance with officer requests, whether or not such citizens were bound to honor such requests under Missouri law.

82.    With deliberate indifference to the rights of citizens, the CITY allowed its officers, including Defendants ELMORE and STEVENS, to utilize physical force to force non-detained citizens into compliance with officer requests, whether or not such citizens were bound to honor such requests under Missouri law.

83. As such, the CITY was deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

84. The failure to train and/or to appropriately modify training constituted official CITY policies, practices, or customs.

85. As a direct and proximate result of the CITY's acts and omissions, Mr. Williams suffered injuries, experienced pain and suffering, and ultimately died.

86. The CITY, acting by and through its Mayor and/or other policymakers, had knowledge of the CITY's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

87. Plaintiffs are informed, believe, and thereupon allege that these policies, practices, customs, and procedures are intentional or the result of deliberate indifference on the part of Defendants, by and through their decision makers.

88. The foregoing unconstitutional customs and practices were a direct and proximate cause of harm to Plaintiffs and Mr. Williams.

89. Such failures on the part of the CITY resulted in the death of Mr. Williams and harm to Plaintiffs.

### Count IV – Supplemental State Law Claim –Lost Chance of Survival
### [ Mo. Rev. Stat. § 537.021(1) ]

90. Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

91. This cause of action arises under the general laws and statutes of the State of Missouri and is brought by all Plaintiffs against all Defendants.

92.     In committing the aforesaid acts and omissions specified in all paragraphs herein above, each of these defendants was negligent and careless in the care and treatment of Mr. Williams in all respects, including but not limited to the following:

a.  Defendants failed to follow procedure in obtaining judicial intervention or MOCARS intervention to commit Mr. Williams to involuntary medical treatment when Defendants decided to physically force Mr. Williams to obtain such care;

b.  Defendants failed to summon medical care for Mr. Williams when, in the exercise of reasonable care, they could have reasonably done so;

c.  Defendants failed to respond to the requests of, and/or requests on behalf of, Mr. Williams to stand down and allow Mr. Williams to make his own medical treatment decisions upon determining that Defendants would not proceed with an attempt to have Mr. Williams involuntarily committed for treatment;

d.  Defendants failed to acknowledge or respond to the warnings from family and neighbors regarding Mr. Williams' perilous medical condition; and

e.  Defendants failed to acknowledge or respond Mr. Williams' serious and life-threatening medical condition when they actually knew or should have known that Mr. Williams' medical conditions could or would have placed him at immediate risk of death if he was tased or placed in the prone position.

93.     Each individual defendant, as a CITY employee, breached his duty to Mr. Williams by failing in all of the above respects.

94.     As a direct and proximate result of the aforementioned acts and omissions of each of the defendants, Mr. Williams was denied any chance of survival and died.

95.     Each defendant's aforementioned acts and omissions were willful, wanton, malicious and in conscious disregard of Mr. Williams' rights, entitling the Plaintiffs to an award of punitive damages.

96.     As a result of the conduct complained of herein, Plaintiffs pray for judgment in an amount that is fair and reasonable against each defendant in excess of seventy-five thousand dollars, for actual damages in an amount that is fair and reasonable, and for punitive damages, costs, and other relief the Court deems just and equitable.

97.     Plaintiffs specifically allege that Defendants acts and/or omissions complained of herein were within each person's control and within the feasibility of each of them to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injuries complained of herein by Plaintiffs.

<strong><u>Count V - Supplemental State Law Claim – Wrongful Death</u></strong><br><strong><u>[ Mo. Rev. Stat. § 537.080 ]</u></strong>

98.     Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

99.     This cause of action arises under the general laws and statutes of the State of Missouri and is brought by all Plaintiffs against all Defendants.

100.    Plaintiffs are the only members of the class entitled to bring this action pursuant to Mo. Rev. Stat. §537.080(2).

101.    In committing the aforesaid acts and omissions specified in all paragraphs herein above, each of these defendants was negligent and careless in the care and treatment of Mr. Williams in all respects, including but not limited to the following:

a. Defendants failed to follow procedure in obtaining judicial intervention or MOCARS intervention to commit Mr. Williams to involuntary medical treatment when Defendants decided to physically force Mr. Williams to obtain such care;

b. Defendants failed to summon medical care for Mr. Williams when, in the exercise of reasonable care, they could have reasonably done so;

c. Defendants failed to respond to the requests of, and/or requests on behalf of, Mr. Williams to stand down and allow Mr. Williams to make his own medical treatment decisions upon determining that Defendants would not proceed with an attempt to have Mr. Williams involuntarily committed for treatment;

d. Defendants failed to acknowledge or respond to the warnings from family and neighbors regarding Mr. Williams' perilous medical condition; and

e. Defendants failed to acknowledge or respond Mr. Williams' serious and life-threatening medical condition when they actually knew or should have known that Mr. Williams' medical conditions could or would have placed him at immediate risk of death if he was tased or placed in the prone position.

102.    As a direct and proximate result of the aforementioned acts and omissions of each of the Defendants, Mr. Willams was denied any chance of survival and died.

103.    Each Defendant's aforementioned acts and omissions were willful, wanton, malicious and in conscious disregard of Mr. Willams' rights, entitling the Plaintiffs to an award of punitive damages.

104.    As a result of the conduct complained of herein, resulting in the wrongful death of Mr. Williams, Plaintiffs pray for judgment in an amount that is fair and reasonable against each Defendant in excess of seventy-five thousand dollars, for actual damages in an amount that is fair and reasonable, and for punitive damages, costs, and other relief the Court deems just and equitable.

105.    Plaintiffs specifically allege that Defendants acts and/or omissions complained of herein were within each person's control and within the feasibility of each of them to alter, adjust, and/or correct so as to prevent some or all of the unlawful acts and injuries complained of herein by Plaintiffs.

<u>**Count VI - - Conspiracy to Violate Civil Rights**</u>
<u>**[Violation of Civil Rights 42 U.S.C. §§ 1983, 1988]**</u>

**BY PLAINTIFFS AGAINST ALL INDIVIDUAL CITY DEFENDANTS**

106.    Plaintiffs incorporate all preceding paragraphs, as though fully set forth herein.

107.    This cause of action arises under United States Code, Title 42, Section 1983 and 1988, wherein Plaintiffs seek to redress a deprivation under color of law of a right, privilege, or immunity secured to themselves and Mr. Williams by the First, Eighth, and Fourteenth Amendments to the United States Constitution.

108.    Defendants ELMORE and STEVENS, and each of them:

a. had a joint and simultaneous duty to make sure that Mr. Williams' civil rights were protected during their encounter with him, including responding reasonably to his need for psychological care;

b. had joint and simultaneous knowledge that Mr. Williams' medical needs were not being met, and that the force being applied was unreasonable and excessive;

c. with such duty, knowledge and a meeting of the minds, took joint action at the same time and in the same place to collaborate to refuse to provide Mr. Williams access to medical treatment and instead apply unreasonable force leading to his death. Thus, forming a 'pact of denial' such that they together ignored the evidence of Mr. Williams' psychological distress and each partnered in joint participation of applying excessive force with his Taser gun to Mr. Williams' body; and

d. acted as described herein above, in conspiracy with, and with the agreement, permission, ratification, and approval of, each other to violate Plaintiffs' civil rights as stated herein.

109. As a direct and proximate result of the aforementioned acts, omissions, and deliberate indifference of each of the Defendants, Mr. Williams died.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief from Defendants, and each of them, for each of the above causes of action:

1. For damages for loss of love, services, companionship, comfort, instruction, guidance, counsel, training, and support;

WHEREFORE, Plaintiffs pray for the following relief from Defendants, and each of them, for each of the above causes of action:

2. For damages for pre-death pain and suffering, loss of life and loss of enjoyment of life;

WHEREFORE, Plaintiffs pray for the following relief from Defendants, and each of them, for each of the above causes of action:

3. For compensatory damages, including general and special damages, according to proof;

4. For punitive damages (except as to CITY) pursuant to 42 U.S.C. §1983 and the common and statutory law of the State of Missouri, and any other applicable laws or statutes, in an amount sufficient to deter and make an example of each non-governmental entity Defendant;

5. For statutory damages, according to proof;

6. For prejudgment and post-judgment interest according to proof;

7. For reasonable attorney fees pursuant to 42 U.S.C. §§ 1983, 1988, the common and statutory law of the State of Missouri, and any other applicable provisions;

8. For costs of suit; and

9. For such further relief which the Court deems just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Ambry N. Emanuel
Ambry N. Emanuel, #66214
**The Wilbers Law Firm, LLC**
130 S. Bemiston, Suite 406
Saint Louis, MO 63105
Ph. (314) 721-3040
Fx. (314) 721-3052
filings@thewilberslawfirm.com
***Attorney for Plaintiffs***

/s/ Robert N. Haferd, Esq.
Robert N. Haferd, Esq.
CA Bar No. 272242
Law Office Of Robert N. Haferd
4210 13th St. N.E.
Washington, DC 20017
T:  202.750.1665
F:   208.379.8639
haferdlaw@gmail.com
***Attorney for Plaintiffs***